UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 25-MJ-238 (GMH) |
| : | |
| JERRAD ANTHONY CHILDS, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Jerrad Anthony CHILDS ("CHILDS") be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C) and 3142(f)(1)(E). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

*Search Warrant on October 30, 2024*

On October 30, 2024, at approximately 5:30 p.m., members of the Metropolitan Police Department's (MPD) Robbery Suppression Unit ("RSU"), were on duty in a plain-clothes capacity wearing armored vests with the word "POLICE" written on the front and back clearly visible. The RSU members pulled into the alley behind 3847 9th Street, Southeast, Washington, D.C. 20032. RSU members were familiar with the house located at that address, having previously executed a search warrant on the house, and knew from that experience that it was used as a "drug house" where narcotics were manufactured, stored, and packaged for sale.

3847 9th Street, Southeast, Washington, D.C. 20032 is located at the intersection of 9th Street, Southeast, and Wahler Place, Southeast. It is located directly across, from the Achievement Preparatory Academy, a public charter school with enrollment from Kindergarten through Eighth Grade.



Members of RSU observed multiple individuals exit the rear of 3847 9th Street, Southeast, Washington, D.C. 20032, one of which RSU identified as CHILDS. CHILDS was observed exiting the residence but remained in the immediate area. RSU members knocked on the rear door of 3847 9th street; an elderly female opened the door, and in plain view, RSU members observed large amounts of white powder, baggies, and other paraphernalia which they recognized as being consistent with possession with the intent to distribute cocaine. RSU members could also smell what they recognized to be the odor of PCP coming from inside the residence. The elderly woman stated she did not live at the residence and that she did not think anyone else was inside.

Having seen CHILDS exit the residence and having observed what they believed to be signs of drug distribution inside the residence, RSU members decided to secure the residence until a search

warrant could be obtained. Prior to applying for the warrant, RSU members performed a security sweep to ensure no one else was inside the residence. While conducting the security sweep, RSU members observed the drug evidence they had already seen, additional drug evidence, and two firearms in plain view in the kitchen.

MPD applied for, and received, an emergency search warrant to search 3847 9th Street, Southeast, Washington D.C, which search began at approximately 9:12 p.m. During the search, RSU members discovered and seized four loaded handguns:

- ➢ A loaded Glock, model 19X, 9mm semi-automatic handgun fitted with a high-capacity extended magazine.

- ➢ A loaded Springfield Armory, model XD45, .45 caliber semi-automatic handgun.

- ➢ A loaded Glock, model 17, 9mm semi-automatic hadngun fitted with a high-capacity extended magazine.

- ➢ A loaded Glock, Model 23, .40 caliber semi-automatic handgun fitted with a high-capacity extended magazine.

DNA swabs were collected from the four firearms and compared with buccal swabs collected from CHILDS and other persons. Subsequent DNA testing confirmed results consistent with the presence of CHILDS' DNA on the Glock, Model 23, .40 caliber semi-automatic handgun. Specifically, the DNA test report stated that it was approximately <u>3.4 quadrillion times</u> more likely that the CHILDS and three unknown persons contributed to the DNA sample collected from the handgun than if four unrelated persons had contributed to the DNA sample. According to the report, this is "very strong support" for the proposition that CHILDS contributed to the DNA sample collected from that handgun.

In addition to the firearms, RSU members also discovered and seized a large volume of suspected narcotics, including a white powdery substance, a white rocklike substance, a waxy substance, and vials of an amber liquid. In addition, the RSU members discovered and seized paraphernalia consistent with drug distribution, including strainers, Pyrex bowls, plastic bags, and digital scales.



The suspected narcotics was transmitted to a DEA laboratory for testing, which testing confirmed the presence of Fentanyl, Cocaine, Phencyclidine (PCP), Heroin, and Cocaine Base, also known as "crack," in the following quantities.

| SUBSTANCE | QUANTITY |
|---|---|
| N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide (Fentanyl) | 241.84g |
| Cocaine | 31.658g |
| Phencyclidine (PCP) | 9.8g |
| Heroin | 7.858g |
| Cocaine Base | 1.136g |

CHILDS had previously been convicted of a crime punishable by more than one year. Specifically, CHILDS was convicted of Possession with Intent to Distribute Cocaine in D.C. Superior Court Case Number 2017 CF2 5090 and sentenced to 6 months' incarceration followed by 24 months' supervised probation. CHILDS was also convicted of Unlawful Possession of a Firearm by a Convicted Felon in Prince George's County, Maryland Circuit Court Case Number CT211153X and sentenced to 5 years' incarceration, with 42 months suspended, to be followed by 5 years' supervised probation.

***Evidence Discovered Pursuant to Search Warrant 24-SW-356***

On November 14, 2024, United States Magistrate Judge Zia M. Faruqui signed Search Warrant 24-SW-356 authorizing the search of four cellular devices telephones seized on October 30, 2024. In reviewing electronic data provided pursuant to that search warrant, law enforcement discovered evidence that CHILDS was and is engaged in the unlawful distribution of controlled substances and the unlawful possession of firearms.

On January 7, 2024, at approximately 9:30 p.m. (UTC), CHILDS (blue text bubbles) sent a text message to an associate featuring a picture of a firearm, followed by the message "Tell stop playing with ur fat man I got shits."




On January 11, 2024, at approximately 2:43 a.m. (UTC) CHILDS (blue text bubbles) received a text message from an associate stating, "im meeting bruh in the morning", CHILDS responds, "Ok bet I told him", "Just get 30", "White for me", "Will want sum dat other shit".









On April 4, 2024, at approximately 10:39 p.m. (UTC), CHILDS (blue text bubbles) sent a text message instructing an associate to, "Let her try tester." On April 9, 2024, at approximately 3:58 p.m. (UTC), CHILDS (blue text bubbles) sent a text message to the same associate instructing them to "Bag up 30 bags for tester."



### Open-Source Examination of CHILDS' Instagram Account – "heavyglocksosa"

Law enforcement has conducted open-source searches of the Instagram account utilized by Defendant, wherein he uses the vanity name "heavyglocksosa." This account is publicly viewable. On multiple occasions, CHILDS, posted pictures of himself holding significant stacks of what appeared to be U.S. currency – including a picture posted on June 25, 2023, which was taken inside 3847 9th Street, Southeast, the location of the October 30, 2024, search warrant.







On September 7, 2025, Law enforcement personnel viewed an Instagram "live" video posted on CHILDS' account. During the live video, while flashing a large amount of money, CHILDS states multiple times "Ima Wahler place god!".



*Execution of Search Warrant 25-SW-284 on October 8, 2025*

On October 7, 2025, United States Magistrate Judge Moxila A. Upadhyaya signed Search Warrant 25-SW-284, which authorized the search of two premises and one vehicle, all of which are associated with CHILDS. On October 8, 2025, ATF executed that warrant at 3928 1st Street, Southeast, Apartment 202 ("Apartment 202"), where CHILDS was spending his overnights. ATF went to the door of Apartment 202 where they loudly knocked and announced their presence.



10

When no one answered the knock and announce, ATF breached the door. As they did so, agents could see into the apartment that CHILDS was standing at the kitchen sink. As the door was breached, CHILDS could be seen throwing something into the hallway of the apartment. CHILDS then exited the apartment, pulled the door closed behind him, and fought with agents to keep them from entering the apartment. Ultimately, CHILDS had to be tased for agents to detain him and enter the apartment.





As ATF agents entered the apartment, they encountered CHILDS' female guest in the bathroom of the apartment, near the toilet, with two large bags of white powder. An additional large plastic bag containing white powder was found in the hallway – in area where CHILDS was seen throwing an object as the door was breached. Additional bags of white powder were discovered in the kitchen where CHILDS was first observed.



During the search of Apartment 202, ATF agents found additional bags of white powder as well as digital scales with white residue on them – indicating that they had been recently used to weigh the contents of the bags.



The suspected narcotics were field tested using an ARX Mark II Handheld Raman Spectrometer, which revealed that the white powder contained the following substances and weights (with packaging).

| SUBSTANCE | QUANTITY |
|---|---|
| Cocaine Base | 41.6 grams |
| N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide (Fentanyl) | 18.0 grams |
| Cocaine | 14.7 grams |
| Mannitol (cutting agent for Fentanyl) | 161.6 grams |

In addition to the narcotics, ATF agents discovered and seized four 7.62 x 39mm Micro Draco style assault pistols, one .300 caliber AR-Pistol, and two 9mm Glock handguns. These weapons were loaded with a total of 74 rounds of ammunition. In addition, ATF agents recovered additional large-capacity magazines and 202 rounds of loose ammunition in a variety of calibers and a set of body armor fitted with rifle plates.







In addition to the narcotics, firearms, and ammunition, ATF agents seized $18,581.99 from inside the apartment. Most of the currency was found in a safe in CHILDS' bedroom and the remainder was found in one of his pants pockets.



## ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

1. **The United States' Bases for Detention**

The United States seeks pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), because CHILDS is charged with violating 18 U.S.C. § 924(c)(1)(A)(i), which is an offense that carries a maximum sentence of life imprisonment. The United States also seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C) because CHILDS is charged with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 841(b)(1)(C), which are Controlled Substances Act offenses that carry a

15

maximum sentence of ten years or more. The United States also seeks pretrial detention pursuant to 18 U.S.C. § 342(f)(1)(E) because CHILDS is charged with violating 18 U.S.C. §§ 922(g)(1), which is a federal firearms offense.

Pursuant to 18 U.S.C. § 3142(e)(3)(B), CHILDS's charges carry a rebuttable presumption in favor of pretrial detention. The rebuttable presumption "'operate[s] <u>at a minimum</u> to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'" <u>Id</u>. at 124-25 (quoting <u>United States v. Alatishe</u>, 768 F.2d 364, 371 (D.C.Cir.1985) (original emphasis); <u>see also</u> <u>United States v. Portes</u>, 786 F.2d 758, 764 (7th Cir.1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or endanger the community if released") (internal quotation and citation omitted)). As this Court has held, the defendant must present <u>evidence</u> to rebut the presumption. <u>United States v. Lee</u>, 195 F. Supp. 3d 120, 124, 125 (D.D.C. 2016).

Moreover, even if CHILDS presents evidence to rebut the presumption, the presumption does not disappear entirely. <u>Id</u>. at 125 (citing <u>United States v. Ali</u>, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable presumption as a factor even if the Defendant "produces credible evidence" to rebut it); <u>United States v. Bess</u>, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")) The rebuttable presumption remains as a factor that must be considered by the Court, because it "'<u>reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial</u>.'" <u>Id</u>. (quoting <u>United States v. Stone</u>, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

16

The United States respectfully submits that CHILDS cannot rebut the presumption in favor of pretrial detention. In addition to the firearms and controlled substances offenses charged in the Criminal Complaint, ATF agents seized a substantial amount of narcotics, five rifle-caliber assault pistols, two handguns, and $18,000 from CHILDS' apartment when he was arrested in this case.

**2.    The Bail Reform Act Factors All Favor Pretrial Detention**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

**A.    The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case.  This Court does not need a reminder from the United States of the dangers inherent in armed drug trafficking in the District of Columbia.  Moreover, CHILDS is not simply a street-level drug dealer, he is the self-advertised "God" of Wahler Place – a supplier of drugs and firearms to "youngins" within his gang who maintained a small arsenal to protect himself and his crew.  The evidence seized from CHILDS's apartment upon his arrest confirms that CHILDS is exactly who the United States' trial evidence will show him to be.

**B.    The Weight of the Evidence Against the CHILDS Favors Pretrial Detention**

The evidence of both CHILDS's guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention. Twice within a twelve-month span, law enforcement has recovered a substantial volume of narcotics and multiple firearms from residences

associated with. At least one of those firearms has already been linked to CHILDS' DNA, with additional DNA testing outstanding.

### C.     CHILDS's History and Characteristics Weigh in Favor of Detention

CHILDS's history and characteristics also weigh in favor of detention. Though CHILDS has not amassed a substantial criminal record, his convictions for Possessession With Intent to Distribute Cocaine and Unlawful Possesion of a Firearm by a Convicted Felon are in line with the evidence outlined above. The United States also directs the Court's attention to the information contained on Page 4 of the Pretrial Services Report.

### D.     The Danger to the Community Created by CHILDS's Release Weighs in Favor of Detention

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283.

CHILDS poses an obvious and articulable threat to the community. Specifically, the threat posed by CHILDS is that he will continue to engage in the distribution and possession with intent to distribute narcotics while armed with at least one firearm. Even if this Court were to find that CHILDS is not a risk of committing additional acts of violence, the risk of dangerousness that he poses to the community justifies pretrial detention.

## CONCLUSION

CHILDS is eligible for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C), and 3142(f)(1)(E), and there is a rebuttable presumption in favor of pretrial detention in this case. Even if CHILDS could present sufficient evidence to rebut the presumption, all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and CHILDS poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ James B. Nelson
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov